## HEADRICK *v.* WISEHART.

VENDOR AND PURCHASER.—*Quitclaim Deed.*—*Parol Contract.*—Where one conveys land by quitclaim deed, and agrees by parol to pay the taxes already charged against the land, and fails to make such payment, and his vendee thereupon pays the taxes, the vendor is not liable to an action for money paid for his use and at his request. OSBORN, J., was not prepared to say that the action might not be sustained, treating the promise to pay the taxes already due as part of the consideration for the purchase.

APPEAL from the Henry Common Pleas.

PETTIT, C. J.—The complaint is this: "Jackson Wisehart complains of John Headrick, defendant, and says that the defendant is indebted to him in the sum of four hundred and seventy-six dollars and sixty cents, for money paid to and for the use of said defendant and at his request, a bill of particulars of which is herewith filed; wherefore the plaintiff demands judgment for five hundred dollars.

"Bill of particulars:                    January 29th, 1870.
"Cash paid Joseph Pugh, treasurer of Madison county, taxes on lots Nos. 12 and 13, city of Anderson.......................................................$356.78

"Cash paid E. B. Carman, treasurer Anderson
    City, taxes on same.................................. $119.88
"Interest on same........................................ 23.34

                                                        $500.00."

The answer was the general denial; trial by the court, find-
ing for the plaintiff, motion for a new trial overruled, judg-
ment on the finding for four hundred and ninety dollars and
ninety-six cents.

The case made by the evidence is this:

Headrick traded to Wisehart a house and two lots, named
in the bill of particulars, in the city of Anderson, which he
had bought at sheriff's sale, for Iowa lands. Wisehart made
Headrick a warranty deed for the Iowa lands, and Headrick
made Wisehart a quitclaim deed for the house and lots in
Anderson City. Before, and at the exchange and delivery
of the deeds, it was agreed by and between the parties by
parol, that each should pay all back taxes for which the land
conveyed by him was liable. The plaintiff swears that this
was the agreement, while the defendant swears directly the
reverse, that no such agreement was made; but the plaintiff
is corroborated in his evidence, and the defendant is not, and
we think the court was warranted in coming to the conclu-
sion that such an agreement was made. It further appears,
by the evidence, that, before suit was brought, the plaintiff
demanded of the defendant that he should pay the taxes due
on the house and lots, and that the defendant refused to do
so, denying that he was in anywise bound to do so. The
plaintiff did pay the taxes due on the Iowa lands, which he
had conveyed by warranty deed to the defendant. It also
appears that the plaintiff sold the house and lots in Ander-
son to a third person, and agreed to pay, or cause to be paid,
all back taxes on them, and that the defendant refused to pay
the taxes, and that the plaintiff did pay them, and relieved
the property from the charge of taxes in the hands of his
vendee. There is no pretence that there was in fact a re-
quest by the defendant to or on the plaintiff to pay this

money. Do the facts above shown, in law, constitute a paying of the money to and for the use of the defendant and at his request? Can a man who conveys land by quitclaim deed, and at the same time by parol agrees to pay back taxes, be bound by such contract? We answer the first question in the negative. A majority of the court think that the second question is not raised by the record, and decline to pass upon it, but I think it is presented in the case, and I hold that it would not only be a contradiction of a written contract made in the most solemn form of law, but it would be making an entirely different contract by parol from the written one. When a man makes a quitclaim deed, he says by it, I give all of my interest, and I do not and will not bind myself to do. more.

*Howe* v. *Walker*, 4 Gray, 318, is a case in point. In that case the court say: "The question raised by these exceptions lies within a narrow compass. The defendant made a deed of quitclaim to the plaintiff, with a covenant to warrant and defend the quitclaimed premises against the lawful claims and demands of all persons claiming by or under him. There was an incumbrance on the premises, not created by the grantor, to wit, a mortgage of one thousand dollars, and the plaintiff avers, that at the time the defendant made this quitclaim and limited covenant by deed, he, at the same time, and for the same consideration, made a parol agreement to discharge and pay the mortgage. This action was brought to recover an amount paid by the plaintiff upon the mortgage, which he says the defendant by his parol agreement had promised to pay. The plaintiff offered evidence of such parol agreement, and it was excluded. It was, we think, rightly excluded. The parties made a contract in writing at one time, for one consideration, upon one subject-matter. Of that contract the written instrument is the exclusive evidence. The parol evidence, if admitted, would enlarge the covenant contained in the deed; it would show a covenant, not merely against incumbrances created by the grantor, to which the deed is restricted, but a covenant or

agreement to remove incumbrances created by a third person.

"It is true, as the plaintiff suggests, that the consideration of a contract, in other respects within the statute of frauds, may be proved by parol. You may prove what was the real consideration, and that it was not that recited in the deed. But you cannot show that, as the consideration of a deed from A. to B., of Whiteacre, B. agreed, by parol, to convey Blackacre to A.; and rely upon such parol agreement as the ground of a suit in equity to enforce a specific performance. That is, under the power of proving by parol the consideration of a written contract, you cannot establish an independent agreement, otherwise within the statute of frauds. Nor can you, under the guise of proving by parol the consideration of a written contract, add to or take from the other provisions of the written instrument. This would practically dispense with the statute of frauds, and with that sound rule of the common law, which finds in the written contract the exclusive and conclusive evidence of the intent and agreement of the parties, and will not suffer such written contract to be varied or affected by any contemporaneous parol agreement." *Oiler* v. *Gard*, 23 Ind. 212; *McClure* v. *Jeffrey*, 8 Ind. 79. I think this is sound reasoning, and conclusive in this case. The causes for a new trial were, "first, because the decision or finding of the court is contrary to law; second, because the said decision is not sustained by sufficient evidence; third, because the amount of the recovery is too high."

The assignments of error are, "first, the court erred in overruling appellant's motion for a new trial; second, the court erred in finding for the plaintiff below, when the finding should have been for the defendant."

The motion for a new trial and the assignment of errors are resolved into the question as to the sufficiency of the evidence to justify the finding and judgment. We hold that the evidence, in view of the law applicable to the case,

Headrick *v.* Wisehart.

was not sufficient to warrant or sustain the finding and judgment, and that the court erred in refusing a new trial.

The judgment is reversed, at the costs of the appellee, with instructions to the court below to grant a new trial.

OSBORN, J.—I agree with the Chief Justice, that the judgment of the court below should be reversed. The evidence does not sustain the action for money paid for the use of the defendant below, at his request.

To maintain an action for money paid for the use of the defendant, it must appear that the plaintiff has paid money to a third party at the request, express or implied, of the defendant, and with an understanding, express or implied, on his part, to repay it. Chitty Contracts, 658.

In the case under consideration, the above requisites are wanting. The money was not paid for the use of the appellant. He was not personally liable for the taxes. His property was not liable to seizure therefor. He purchased the lots in May, and sold them to the appellee in July of the same year. He had no interest in the lots to protect after that. It was not paid at the request of the appellant. There is no pretence that an express request was shown by the evidence. On the contrary, when the appellant was asked by the appellee to make the payment, instead of asking the latter to do it, he put him off, and suggested that the lots had better be sold, so as to strengthen the title. Nor can it be implied. The breach of his contract with the appellee to pay the taxes cannot be construed into an implied request. Otherwise than by that contract, he was under no obligation to pay the taxes, and after the execution of his quitclaim deed to the appellee, he had no interest in doing it. Whatever interest he had in the lots was by that deed transferred to the appellee. There was no promise by the appellant to repay the money to the appellee.

I am not prepared to say that an action might not be sustained on a complaint stating the transaction detailed in the evidence, and predicating the action upon the contract to

pay the taxes upon the lots as a part of the consideration for the Iowa lands.

I place the reversal solely upon the ground that the evidence does not sustain an action for money paid for the use of the appellant, and not on the ground that, to sustain it, the terms of the quitclaim deed must be varied by oral evidence. I do not think that question is properly before us, and hence decline to discuss or pass upon it.

*J. Brown* and *R. L. Polk*, for appellant.

*M. L. Bundy* and *E. H. Bundy*, for appellee.