# CHARLESTON.

43   441
43   482
  43  441
  60  326

## BARNETT *r.* BOONE LUMBER CO.

Submitted January 19, 1897—Decided April 24, 1897.

1. ORDER—*Acceptance—Statute of Frauds.*

    An unconditional verbal promise to pay a written order is an acceptance of such order, and, if founded on a sufficient legal consideration, is binding on the acceptor. The debt, default, or misdoing of another is not a sufficient consideration to exempt such promise from the operation of the statute of frauds. (p. 444.)

2. INSTRUCTIONS—*Erroneous Instructions—Reversal.*

    Where the instructions given in behalf of plaintiff are erroneous, and contradictory to instructions given in behalf of defendant, judgment in favor of plaintiff will be reversed. (p. 445.)

Error to Circuit Court, Kanawha county.

Action by J. H. Barnett against the Boone Lumber Company. Judgment for plaintiff and defendant brings error.

*Reversed.*

WILSON & PAYNE and S. S. GREEN, for plaintiff in error.

SIMMS & ENSLOW and HERBERT FITZPATRICK, for defendant in error.

DENT, JUDGE:

The Boone Lumber Company complains of a judgment of the Circuit Court of Kanawha county, rendered against it on the 5th day of April, 1895, in favor of J. H. Barnett, for the sum of one thousand one hundred and thirty-two dollars. The following is a statement of the case: "On the 3d of November, 1891, G. S. Scites and Isaac Plumley entered into a contract with the J. H. Millender Lumber Company for the sale of logs at that time on the A. M. Smith tract of land, lying on Cobb's creek. On the 20th of January following, Scites, having purchased Plumley's interest, was released from the agreement by the assumption of certain indebtedness, accompanied by a cash payment of $500. Prior to the formation and release of this

contract in the fall of 1891, J. H. Barnett, the defendant in error, had been engaged in hauling this lumber from Plumley, working through the autumn months, but receiving virtually nothing. Early in January, 1892, Barnett entered the employ of Scites, and continued hauling until April, it being mutually agreed that the logs should be a pledge of payment for the labor. Upon the 4th of March, 1892, Scites contracted with the Lindsay-Cochran Manufacturing Company (later the Boone Lumber Company, the plaintiff in error) in regard to the logs hauled by Barnett, and then at the mouth of Cobb's creek awaiting a rise in the water, but bearing the mark 'J. B.' for future identification. It was claimed that the lumber company took the timber subject to existing liens, including the claim of Barnett. March 29th an order: 'March 29, 1892. Messrs. Lindsay-Cochran Co.: Please pay J. H. Barnett $600.00 (six hundred dollars) for me, and this shall be your receipt for same, on timber. Yours, etc., G. S. Scites,' —for $600, was given Barnett by Scites upon the Lindsay-Cochran Company, promptly presented, and verbally accepted, either conditionally or unconditionally, but no payment was made. About the same time a flood tide had brought out part of the timber, and it was being measured and sawed at the mill of the plaintiff in error, though a large portion of it still remained upon the banks of Cobb's creek; and in April, 1892, the first lien upon it, held by the owners of the land from which it had been cut, was paid by the Boone Lumber Company. During this month the second order: 'April 22, 1892. Messrs. Lindsay-Cochran Co.: Please pay J. H. Barnett $370.00, and charge the same to me. Yours, respectfully, G. S. Scites,'—drawn similarly to the former, in the sum of $370, was given. As in the prior case, presentation was immediate, and acceptance verbal,—claimed by plaintiff, absolute; by defendant, conditional June 8, 1892, the benefit of the contracts of November 3, 1891, and January 20, 1892, was assigned to the Lindsay-Cochran Manufacturing Company, and 12 days later an order for $6,500, drawn upon it March 29, 1891, in favor of Pritchard & Brubaker, was paid."

The court gave the following instructions to the jury in behalf of plaintiff: "The court instructs the jury that the

acceptance of a written order may be made verbally as
well as by writing, and that a verbal acceptance of an or-
der is binding on the acceptor." Instruction No. 2: "The
court further instructs the jury that a verbal promise to
pay an order, by the drawer thereof, at the time of presen-
tation, is an acceptance of said order, and binds the
drawer." And the following in behalf of defendant: In-
struction No. 1: "The court instructs the jury that if they
believe, from the evidence, that the Lindsay-Cochran Man-
ufacturing Company accepted the orders described in the
declaration verbally, in order to entitle the plaintiff to
recover he must prove to their satisfaction that such ver-
bal acceptance, so made, was such as to show clearly the
intention on the part of said company to bind itself to the
payment of the said orders at all events, and that, if the
acceptance·was equivocal, the plaintiff cannot recover."
Instruction No. 2: "The court further instructs the jury
that if they believe, from the evidence, that the defendant
company, by its duly authorized agent, accepted the or-
ders mentioned in the plaintiff's declaration upon the con-
dition that said company would pay the said orders out of
any moneys which it might owe G. S. Scites when the logs
purchased by said company from said Scites were delivered
according to contract, the plaintiff cannot recover until
he proves that the defendant company does owe said
Scites on said contract, and, if it does owe him, then only
to the extent of said indebtedness." Instruction No. 12:
"The court instructs the jury that the plaintiff did not
have a lien upon the logs hauled by him at the time of the
presentation of the orders of March 26, and April 22, 1894,
if prior to such presentation he voluntarily parted with
the possession of said logs, and turned them over to de-
fendant's agents." Instruction No. 13: "The court in-
structs the jury that if they find, from the evidence, that
the defendant, by its authorized agents, promised the
plaintiff that it would pay the orders of March 26, and
April 22, 1894, if there should be anything due G. S.
Scites after the payment by defendant of other and prior
claims, and they further find that, after the payment of
such claims, there was nothing due said Scites, then they
cannot find for the plaintiff because of such promise." In-
struction No. 14: "The court instructs the jury that al-

though they shall find, from the evidence, that the defendant, by its authorized agent or agents, promised to pay the orders of March 26, and April 22, 1894, yet they cannot find for the plaintiff if, at the time of. the presentation of said orders, and at the time of said promise, the defendant company was not indebted to G. S. Scites, and there was no consideration for the performance of said promise." Instruction No. 15: "The court instructs the jury that a promise to pay the debt of another cannot be enforced unless such promise was in writing, and if they find, from the evidence, that the defendant, by its authorized agents, promised to pay the orders of March 26, and April 22, 1894, and that said promise was merely for the payment of the debt of G. S. Scites, and without consideration, then they cannot find for the plaintiff because of such promise." The defendant also asked for nine other instructions, which were refused by the court.

As the instructions given fully and completely cover defendant's case, it is useless to cumber the record with those refused, as they cover the same grounds as those given, and some of them are plainly erroneous, and the court committed no substantial error in refusing them. The only question involved in this case is whether the defendant, by its duly authorized agents, accepted the orders in controversy in such manner as would make it legally liable to pay the same to the plaintiff. Such was the real issue between the parties. The acceptance was verbal, and if made without other consideration than the debt, default, or misdoing of another, it was void under the statute of frauds, and, if conditional, it would not be binding until the condition was fulfilled, even if on good consideration. *Gerow* v. *Riffe,* 29 W. Va. 462 (2 S. E. 104); 1 Am. & Eng. Enc. Law, 227; *Walton* v. *Mandeville,* 56 Iowa 597 (9 N. W. 913); Browne, St. Frauds, 174; 2 Rob. Prac. 152. Neither of the instructions given by plaintiff properly propounds the law. They are to the effect that the verbal acceptance of an order, without regard to the consideration, is valid and binding, which would amount to a nullification of the statute of frauds. They are abstract propositions of law, and virtually equivalent to instructing the jury "that, if they believe that the defendant verbally promised to pay the or-

ders in controversy, they must find for the plaintiff." An instruction in this form would be recognized at once as bad, for the reason that it ignores the fact that such promise is liable to be defeated for want of consideration, and that it might have been coupled with a condition. The defendant claimed that this was the case, yet these instructions wholly disregard such defense. The instructions could have been made good by adding thereto, "if such verbal promise was on a sufficient legal consideration," or "was not for the payment of the debt, default, or misdoing of another." It is true that the defendant's instructions are contradictory to, and thereby supply the defect in, the plaintiff's; but this does not cure the error, for the court cannot tell which set of instructions the jury followed in reaching their verdict. Presumably, however, they adhered to the erroneous instructions in behalf of plaintiff. In the case of *McMechen* v. *McMechen*, 17 W. Va. 703, this court held that "it is error to give inconsistent instructions to the jury, for it is calculated to confuse and mislead them. It leaves the jury at liberty to decide according to the correct rule of law, or the contrary, and renders it impossible for the court to determine upon what legal principles the verdict was founded." *McCreary's Adm'r* v. *Railroad Co.*, 43 W. Va. 110 (27 S. E. 327); *Woodsell* v. *Improvement Co.*, 38 W. Va. 23 (17 S. E. 386); *McKelvey* v. *Railroad Co.*, 35 W. Va. 500 (14 S. E. 261); *Hall* v. *Lyons*, 29 W. Va. 420 (1 S. E. 582); *Mason* v. *Bridge Co.*, 20 W. Va. 223.

The defendant's interrogatories are open to the same objection as the plaintiff's instructions. It may be true that the defendant was not indebted to G. S. Scites, the drawer of the order, and that there was no novation, or arrangement between the parties, by which the plaintiff was to release Scites and take the defendant for the amount of the orders; yet, if the plaintiff released a valid lien on the logs, and the defendant received the benefit of such release, such a consideration would be sufficient to make the verbal promise binding. *Gerow* v. *Riffe, supra,* and cases therein cited. The defendant objects to the testimony of Godfrey Scites in relation to the understanding between himself and the plaintiff as to his right to hold the logs until he was paid for the hauling. There certainly

can be no good reason why this evidence should not go to the jury, as one of the questions involved was as to whether the plaintiff had a lien on the logs. F. O. Ingraham's testimony is objected to for the same reason, and it does not appear that it was incompetent for a like purpose. The defendant was claiming under Scites, and took only such interest in the logs as he held. The testimony of Peter McClure, wherein he details a conversation had with Mr. Davidson, agent of defendant, to the effect that the agent said: "We are going to pay you and Mr. Pauley and Mr. Barnett. What more do you want?"—is incompetent to prove a binding promise. Yet it is proper to go to the jury, as tending to establish the admission of liability on a promise already made,—in other words, to fortify it as a promise made on sufficient consideration. Defendant further insists that it had the right to show by Benton Pauley in what manner it accepted his order, as tending to show, it must be presumed, that plaintiff's orders were accepted in the same manner. The counsel certainly know that such evidence is improper, as there may be reasons for accepting the one order that would not apply to the other, and *vice versa*. If defendant was not indebted to Godfrey Scites at the time the orders were presented, a verbal promise to pay or accept the same would not be binding, unless sustained by a sufficient legal consideration, and, if indebted, no promise would be necessary, as the orders to the extent thereof would operate as an assignment of such indebtedness on notice without acceptance.   2 Am. & Eng. Enc. Law (2d Ed.) 1059.

For the error committed in giving the plaintiff's instructions the judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*